# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Metropolitan Property and Casualty, Insurance Company,

        Plaintiff,

v.

Brian Flakne and Victoria Rico,

        Defendants.

Civil No. 09-2441 (DWF/JJK)

**MEMORANDUM OPINION AND ORDER**

---

Timothy J. O'Connor, Esq., Laurie W. Meyer, Esq., and Teresa E. Knoedler, Esq., Lind, Jensen, Sullivan & Peterson, PA, counsel for Plaintiff.

Brian K. Flakne, Esq., *Pro Se*, Defendant and counsel for Defendant Victoria Rico.

---

## INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Summary Judgment. For the reasons set forth below, the Court grants Plaintiff's motion.

## BACKGROUND

This case involves disputes arising out of the sale of a loft in the Madison Loft condominium projects in Minneapolis, Minnesota, to a non-party, Michael Gresser. Gresser sued Defendants Brian Flakne and Victoria Rico, along with other parties, in state court alleging various claims related to the sale of the loft. In the suit before this

Court, Flakne and Rico's insurance provider Plaintiff Metropolitan Property and Casualty Insurance Company ("MetLife") seeks a declaration that MetLife does not owe Flakne and Rico a duty to defend the underlying state court suit. MetLife presently seeks summary judgment declaring that it is has no duty to defend Flakne and Rico in the underlying lawsuit.

### *Underlying State Lawsuit*

In February 2007, Gresser purchased a loft, Unit 404, from the developer of Madison Lofts, Presidents Row Lofts, LLC ("PRL"). Flakne is the vice president of PRL and holds a 30% interest in it. (Defs.' Mem. in Opp'n at 4.) Flakne acted as PRL's representative and attorney during the lofts' construction. (*Id.*) Flakne also served on the board of the Madison Lofts Condominium Association ("MLCA") until September 2008. Rico, Flakne's spouse, is a real estate agent with Edina Realty and acted as a dual agent for PRL and Gresser for the sale of Unit 404. (*Id.* at 5.) Rico served on the MLCA board from September 2008 until September 2009.

In February 2006, Inspec, an independent testing company, wrote a report revealing the allegedly "poor condition of the Property including that the brick, mortar, and masonry walls of the building were prone to leaks and required substantial repairs and maintenance to remedy the potential for water intrusion, . . ." and that they specifically lacked "through-wall flashing to prevent water infiltration at windows." (O'Connor Aff. ¶ 3, Ex. 1.) Gresser alleges that approximately $300,000 of repairs were needed according to the Inspec report.

PRL retained construction companies to work on the renovation project, but Gresser alleges that the contract for the project did not include Inspec's recommended repairs. *Id.* Gresser also alleges that sometime later, PRL and Flakne were made aware of a "serious water intrusion problem" requiring three million dollars of repair work. *Id.*

Gresser brought suit against Flakne and Rico in a lawsuit pending in Hennepin County District Court alleging failure to disclose and breach of warranties under Minnesota Statute Section 515B, fraud/intentional misrepresentation, negligent misrepresentation, and violation of Minnesota Consumer Fraud Act against Flakne and Rico.[1] *Michael Gresser and Unit 404, LLC v. Presidents Row Lofts, LLC, Steve Minn, Brian Flakne, Lucy Minn, Victoria Rico, and Edina Realty, Inc.*, (File No. 27-CV-20068) filed December 28, 2009. Gresser alleges that PRL, Flakne, and Rico failed to inform him about the Inspec report, the water intrusion problem, and their failure to do the repairs Inspec recommended.[2] Gresser alleges that Flakne signed the disclosures and coordinated their creation and Rico "participated on [sic] the preparation of disclosures."

*Insurance Policy*

MetLife issued Flakne and Rico an insurance policy covering their automobiles and boats, effective February 1, 2006 to February 1, 2007. (O'Connor Aff. ¶ 10, Ex. 8 at 15.) The Policy covered legal liability resulting from "an occurrence in which there is

---

[1] Gresser also alleges breaches of fiduciary duty, statutory disclosure, and breach of contract against Rico.

[2] Flakne and Rico allege that PRL performed all of the recommendations in the Inspec Report except for some tuck pointing, which they allege Gresser's concrete company performed. (Defs.' Mem. in Opp'n at 6.)

3

actual accidental property damage, personal injury or death, anywhere in the world, subject to the limitations and exclusions in PAK II." (*Id*. at 17.) The Policy defines "Occurrence" as "resulting in personal injury or property damages neither expected nor intended by anyone insured . . . ." (*Id.*) "Property damage" is defined under the Policy as "damage to someone else's property or its loss or destruction and also the loss of its use." (*Id*.) "Personal injury" is defined as "physical bodily injury such as broken bones" and also includes "nonphysical injuries to a person's feelings or reputation, including mental injury, mental anguish, wrongful eviction, libel slander, defamation of character, invasion of privacy and false arrest." (*Id.*) "Accident" or "incident" mean "anything that causes property damage or personal injury or death without your expecting or intending it." (*Id.* at 52.)

The Policy specifically excludes the liability of any person who intentionally causes personal injury or property damage. (O'Connor Aff. ¶ 10, Ex. 8 at 17.) The Policy also states under "Major Exclusions" that it "do[es] not cover any liability or claims connected with any business, profession, or occupation." (*Id*. at 34.) Moreover, the Policy does not cover "anyone who is liable for personal injury or property damage because he or she is a corporate officer or a member of the board of directors of any corporation except a religious, charitable, civic, or nonprofit corporation." (*Id.*)

MetLife filed this declaratory action in this Court on September 10, 2009. MetLife moves for summary judgment seeking a declaration that it has no duty to defend Flakne or Rico in the underlying state lawsuit. Flakne and Rico, in their memorandum in opposition, request a stay arguing that not all necessary parties are joined and that they

4

would like to conduct additional discovery. On June 16, 2010, the Court heard oral argument on the summary judgment motion.[3]

## DISCUSSION

**I.      Legal Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may

---

[3] Flakne and Rico object to the scheduling of the oral hearing. Apparently, the parties had different understandings about the effect of Chief Magistrate Judge Raymond Erickson's recusal from the case. Flakne and Rico argue that a date for this motion could not be chosen because there was no scheduling order in force. MetLife correctly understood that the parties must follow the original scheduling order from Chief Judge Erickson unless and until otherwise ordered. Under that scheduling order, dispositive motions must be heard by August 1, 2010.

not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Defendants' Request for Stay

Flakne and Rico request that the Court grant a stay and not rule on summary judgment for two reasons. First, they argue that all necessary parties are not joined. Second, they contend that they have not had adequate opportunity to conduct discovery.

Flakne and Rico argue that Gresser, Unit 404, LLC, and Steve and Lucy Minn are required parties pursuant to Federal Rule of Civil Procedure 19(a)(1). Under that rule, joinder of any person subject to service of process whose presence will not destroy a court's subject matter jurisdiction is required if:

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (ii) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

The plain language of Rule 19(a)(1)(B) requires that a person not only have an interest related to the subject of the action, but that person must "claim[ ] an interest." *See, e.g., Amer. Ins. Co. v. St. Jude Med., Inc.*, 597 F. Supp. 2d 973, 978 (D. Minn. 2009). Gresser, Unit 404, LLC, and Steve and Lucy Minn have claimed no interest in the pending litigation and are thus not required parties. In fact, they were given notice of and an opportunity to participate in this lawsuit, but they affirmatively disavowed. (Aff. of

6

Teresa E. Knoedler ("Knoedler Aff.") Exs. 1 and 2.) Thus, the Court denies Flakne and Rico's request for a stay on the grounds of joinder.

Flakne and Rico also request a continuance under Federal Rule of Civil Procedure 56(f) because they argue that they have not had adequate opportunity to conduct discovery. Federal Rule of Civil Procedure 56(f) provides:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

Fed. R. Civ. P. 56(f). To request discovery under Rule 56(f), a party must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful. *Johnson v. United States*, 534 F.3d 958, 965 (8th Cir. 2008).

The Court concludes that Flakne and Rico have made an insufficient showing of any efforts to obtain the requested information and why their efforts were unsuccessful. In particular, they have not made a showing that they made any efforts to obtain the discovery they now claim is essential to their case. In addition, their current effort to obtain additional information is untimely. Discovery closed on June 1, 2010. The discovery issue should have been addressed prior to the discovery deadline. Accordingly, Flakne and Rico's Rule 56(f) motion is denied.

**III.     MetLife's Motion for Summary Judgment**

An insurer's duty to defend an insured is contractual. *Meadowbrook, Inc. v. Tower Ins. Co., Inc.*, 559 N.W.2d 411, 415 (Minn. 1997). The duty to defend covers those claims that arguably fall within the scope of the insurance policy. *Id.* An insurer's duty to defend is determined by comparing the allegations in the complaint with the relevant policy language. *Prahm v. Rupp Constr. Co.*, 277 N.W.2d 389, 390 (Minn. 1979). "A duty to defend an insured on a claim arises when any part of the claim is 'arguably' within the scope of the policy's coverage, . . ." *Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 165 (Minn. 1986).

MetLife argues that the Policy's Business Pursuit Exclusion bars coverage of the claims against Flakne and Rico in the underlying lawsuit. MetLife states that "there is no factual dispute that all the claims asserted against Flakne and Rico arise from their alleged acts or failure to act in their business and professional capacity – Flakne as a member, governor, officer, agent, and lawyer for PRL, and Rico as real estate sales agent for Edina and dual agent for PRL and Gresser." (Pl.'s Mem. in Supp. at 12.)

Flakne and Rico contend that MetLife must pay for its defense in the dispute with Gresser because they were sued as members of the MCLA Board. They argue that MLCA is a non-profit limited liability company and that they served on the Board as unit owners and for no business purpose. Flakne and Rico also argue that Gresser's negligent misrepresentation claim against Rico is based on her role as Flakne's wife because her sole basis for knowing about the Inspec Report is because she is Flakne's wife.

Here, the conduct creating liability was the sale of the loft to Gresser, allegedly without proper disclosures. Flakne and Rico's membership on the MCLA Board does not alter their roles as real estate agent, developer, and owner for the sale of the loft to Gresser. The alleged misrepresentations were made in their professional capacities and were "connected with [their] business, profession, or occupation" regardless of how or why Flakne and Rico knew about the information they failed to disclose. The Court therefore grants summary judgment and holds that MetLife is not obligated to defend Flakne and Rico in the underlying suit as a matter of law.

MetLife also argues that there was no "occurrence" triggering coverage under the Policy because the allegations in Gresser's Complaint are intentional acts. Flakne and Rico argue that the negligent misrepresentation and Consumer Fraud claims are covered "occurrences" that caused "accidents." The parties discuss two cases: *Tschimperle v. Aetna Casualty & Sur. Co.*, 529 N.W.2d 421 (Minn. Ct. App. 1995) and *Reinsurance Ass'n v. Timmer*, 641 N.W.2d 302 (Minn. Ct. App. 2002).

In *Tshimperle*, the insured misrepresented the value of a tractor purchased by a third party. 529 N.W.2d at 423. The court held that the misrepresentations were not accidental because the insured intended that the third party rely on the representation of the tractor's value and the claimed damages resulted directly from the misrepresented value. *Id.*

In *Timmer*, the insured sold diseased cattle, and, as a result, the purchaser's existing herd contracted the disease. 641 N.W.2d at 313. The claimed damages were for the infection of the existing herd, not for the sale of the diseased cattle themselves. *Id.*

9

The court in *Timmer* found the misrepresentation to be an "accident" because the insured did not intend to infect the existing herd. *Id.*

Like in *Tshimperle*, the allegations of the underlying case support MetLife's position that there was no accident. Gresser alleges that Flakne and Rico knew about the Inspec report, the water intrusion problem, and that PRL failed to repair the lofts as recommended. Additionally, like the sale of the tractor in *Tshimperle*, the claimed damage in the underlying suit is for the sale of the loft and that any alleged misrepresentation induced the purchase of the loft. Thus, the Court concludes that the misrepresentations are not "occurrences" covered by the Policy and grants summary judgment for MetLife on this ground as well.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1. Flakne and Rico's request for a stay or continuance is **DENIED.**

2. Metlife's Motion for Summary Judgment (Doc. No. [18]) is **GRANTED.**

3. Plaintiff's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 27, 2010               s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge